FILED

2013 MAY 21  AM 11: 48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

1  Tyler J. Woods (State Bar No. 232464)
      twoods@trialnewport.com
2  Richard H. Hikida (State Bar No. 196149)
      rhikida@trialnewport.com
3  Scott J. Ferrell (State Bar No. 202091)
      sferrell@trialnewport.com
4  **NEWPORT TRIAL GROUP**
   A Professional Corporation
5  4100 Newport Place, Suite 800
   Newport Beach, CA 92660
6  Tel: (949) 706-6464
   Fax: (949) 706-6469
7
   Attorneys for Plaintiff
8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11  THERMOLIFE INTERNATIONAL, LLC,  Case No.  **CV13-03628 SVW (JCx)**

12            Plaintiff,           **COMPLAINT FOR PATENT**
                                   **INFRINGEMENT**
13            vs.
                                   **JURY TRIAL DEMANDED**
14  NUTRAPLANET,

15            Defendant

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**COMPLAINT FOR PATENT INFRINGEMENT**



Plaintiff Thermolife International, LLC ("Plaintiff") hereby alleges for its Complaint against NutraPlanet ("Defendant"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## I.  THE PARTIES

1.     Plaintiff is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2.     Plaintiff is the owner and assignee of United States Patent No. 8,202,908 ("the '908 patent") titled "D-Aspartic Acid Supplement," and Plaintiff licenses the '908 patent to several third-parties.

3.     Nutraplanet is an organization or entity organized, existing, and/or operating under the laws of Georgia with a principal place of business at 111 Bethea Road, Suite 101 in Fayetteville, Georgia, 30214.

## II.  JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

6.     This Court has personal jurisdiction over Defendant.  By way of example and without limitation, Defendant, directly or through intermediaries, ships, distributes, offers for sale, sells, and advertises the following dietary supplement products in the United States, the State of California, and the Central District of California, and/or has done so in the past, with these products collectively referred to as the "accused products":

   a. "Hyper FX" and "Evotest" (powdered and tablet forms), manufactured by or for and marketed by Bio-Engineered Supplements and Nutrition, Inc.;

COMPLAINT FOR PATENT INFRINGEMENT

b. "Propadrol", manufactured by or for and marketed by Engineered Sports Technology, LLC;

c. "Intratest Xtreme," "Speed X3" and "Testodrol X9," manufactured by or for and marketed by Lecheeck, LLC;

d. "NMDA," "MOAB," "Nuke" and "Napalm," manufactured by or for and marketed by Muscle Warfare Inc.;

e. "T-Up", manufactured by or for and marketed by Nutrex Research, Inc.;

f. "D-pol", manufactured by or for and marketed by Purus Labs, Inc.; and

g. "Pure Test", "Revolution PCT", and "Ignite 2" manufactured by or for and marketed by Redefine Nutrition LLC d/b/a Finaflex.

7.     Defendant has purposefully and voluntarily placed the accused DAA products into the stream of commerce with the expectation that they will be purchased in the Central District of California, and the products are actually purchased in the Central District of California and by consumers located in this District.

## III.   THE ACCUSED PRODUCTS

8.     The accused products purport to and do increase the levels of testosterone in adult male humans.

9.     The accused products are administered by oral ingestion.

10.    The accused products contain a D-aspartic acid compound comprised from D-aspartic acid, D-Aspartate salts, or D-aspartate esters.

11.    The accused products branded are intended to be taken by adult male humans and are taken primarily by adult male humans.

12.    The accused products purport to contain and actually contain a D-aspartic acid compound which is, according to the products' instructions for use, to be administered and is administered in an amount and for a time sufficient to increase the levels of testosterone in end-users.

COMPLAINT FOR PATENT INFRINGEMENT

13. Defendant markets, advertises, offers for sale, and sells the accused products.

14. As part of its transaction of business in this jurisdiction, Defendant sells its accused products to end-users of the accused products as well as other distributors and retailers with places of business within the Central District of California.

15. Defendant has committed the tort of patent infringement within the State of California, and more particularly, within the Central District of California, by virtue of the fact that Defendant has shipped, distributed, offered for sale, sold, and advertised, and continues to ship, distribute, offer for sale, sell, and advertise the accused products in this District.

16. The labels and advertisements for the Hyper FX-branded products state, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid."

    b. It is to be taken by oral ingestion.

    c. "ingredients are designed to support…Testosterone"

    d. "mix 1 level scoop with 3-6 oz of water and drink immediately on an empty stomach"

    e. "For best results, use a second level scoop at least 4 hours after using the first level scoop"

17. The labels and advertisements for the Evotest-branded products sold in powdered form state, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid."

    b. It is to be taken by oral ingestion.

    c. "BSN's first concentrated powdered testosterone support supplement"

    d. "BSN is hoping to get consumers to expect more performance out of their testosterone support supplement and see the difference this novel formula can make"

    e. "not intended for use by women"

**COMPLAINT FOR PATENT INFRINGEMENT**

   f. "mix 1 scoop with 6 oz. of water twice daily"

   g. "cutting-edge ingredients like....d-aspartic acid"

   h. "EVOTEST ingredients when used as directed, at maximum dosage, over time, combined with a healthy diet and regular exercise are designed for testosterone support"

18. The labels and advertisements for the Evotest-branded products sold in tablet form state, as relevant to this matter and without limitation, as follows:

   a. The product contains "D-Aspartic Acid."

   b. It is to be taken by oral ingestion.

   c. "Supports Production of Testosterone Already Within the Normal Range"

   d. "BSN is hoping to get consumers to expect more performance out of their testosterone support supplement and see the difference this novel formula can make"

   e. "9-Component TEST Matrix"

   f. "Testosterone support has evolved - time to gear up with EVOTEST"

   g. "Not for use by women"

   h. "Full 3-Week Cycle in Each Bottle"

   i. "take 2 tablets 2 times daily"

   j. "efficacious ingredients like....d-aspartic acid"

19. The labels and advertisements for the product Propadrol state, as relevant to this matter and without limitation, as follows:

   a. The product contains "Methyl-2a (D-Aspartic Acid & 5 Methyl-7 Methoxy Isoflavone)"

   b. It is to be taken by oral ingestion.

   c. "Pro-Testosterone Supporting Formula"

   d. "Boost Testosterone Levels"

**COMPLAINT FOR PATENT INFRINGEMENT**

  e. "This full spectrum formula utilizes technologies and science that will set a new standard in Testosterone Enhancement and Therapy"

  f. "Anti-Aromatase/Testosterone Booster"

  g. "Take four (4) capsules once daily.  Use only for a period of 30 days. Wait 90 days prior to using the product again."

  h. The product provides 3 grams per serving of "Methyl-2a (D-Aspartic Acid & 5 Methyl-7 Methoxy Isoflavone)"

20. The labels and advertisements for the Intratest Xtreme products state, as relevant to this matter and without limitation, as follows:

  a. The product contains "D-Aspartic Acid"

  b. It is to be taken by oral ingestion

  c. "Increase Testosterone Naturally Up to 42%"

  d. "Take one serving during your workout for an effective intra workout recovery product or take another dose before bed to get your clinical dose of D-Aspartic Acid to naturally increase your testosterone levels by up to 42%."

21. The labels and advertisements for the Speed X3 branded products state, as relevant to this matter, and without limitation, as follows:

  a. The product contains "D-Aspartic Acid"

  b. It is to be mixed with cold water and taken by oral ingestion

  c. "Speed X3 uses KEY ingredients like d-aspartic acid, beta-alanine, agmatine sulfate, pikotropin that will help push your workouts to failure."

22. The labels and advertisements for Testodrol X9 branded products state, as relevant to this matter and without limitation, as follows:

  a. The product contains "D-Aspartic Acid"

  b. Take 1 serving dialing with a full glass of water

COMPLAINT FOR PATENT INFRINGEMENT

c. "Testodrol X9 is loaded with 9 of the most effective testosterone boosting ingredients on the market today. TX9 will increase your test levels very quickly while at the same time keeping your estrogen low which means you will keep your gains after you get off of the product."

d. "Boost Free Testosterone"

23.    The labels and advertisements for the NMDA branded products state, as relevant to this matter and without limitation, as follows:

a. The product contains "D-Aspartic Acid"

b. The product is to be orally ingested

c. "the perfectly dosed, extremely sophisticated amino acid based testosterone amplifier"; and

d. "Just one cycle of this product is enough to jump start testosterone to levels not experienced since puberty."

24.    The labels and advertisements for the MOAB-branded products state or stated prior to their reformulation, as relevant to this matter and without limitation, as follows:

a. The product contains "D-Aspartic Acid"

b. It is to be taken by oral ingestion.

c. The D-aspartic acid in the product is sold as an ingredient in a "NMDA Amino Acid Hormonal Amplifying Matrix (Testosterone, Growth Hormone, IGF-1 & IGF-2 Stimulator"

d. "As a dietary supplement, MOAB is a high potency formula that may be mixed in water or your favorite sports drink.   To assess for tolerance, begin use by mixing 1/2 to 1 scoop in your beverage of choice, 30 to 45 minutes prior to working out.   Very experienced users may use 2 to 3 scoops.  Use for 2-3 months before taking a 1 month off cycle.   Pyramid dose by tapering at the beginning and end of your cycle."

25.     The labels and advertisements for the Nuke-branded products state or stated prior to their reformulation, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid"

    b. It is to be taken by oral ingestion

    c. The D-Aspartic Acid in the product is sold as an ingredient in a "NMDA AMINO ACID HORMONAL AMPLIFYING MATRIX 10mg: (Testosterone, Growth Hormone, IGF1 & IGF-2 Stimulator)"

    d. "Nuke is a high potency formula that may be mixed in water or your favorite sports drink.  To assess for tolerance, begin use by mixing1 scoop in your beverage of choice, 30 to 45 minutes prior to working out.  Continue to sip throughout your entire workout and 30 minutes after.  Cycle info:  Use for 2-3 months before taking a 1 month off cycle.  Pyramid dose at the beginning and end of your cycle."

26.     The labels and advertisements for the Napalm-branded products state or stated prior to their reformulation, as relevant to this matter and without limitation, as follows:

    a. The product contains "D-Aspartic Acid."

    b. It is to be taken by oral ingestion.

    c. The D-Aspartic Acid in the product is sold as an ingredient in a "NMDA AMINO ACID HORMONAL AMPLIFYING MATRIX 10mg: (Testosterone, Growth Hormone, IGF1 & IGF-2 Stimulator) D-Aspartic Acid, N-Methyl-D-Aspartate"

    d. "As a dietary supplement, Napalm is a high potency formula that may be mixed in water or your favorite sports drink. To assess for tolerance, begin use with 1-2 scoops (Typically, users that weight under 150 lbs should start with 1 scoop) in your beverage of choice, 30 to 45 minutes prior to working out. Very experienced users may consume up to 3

scoops; and very experienced users over 200 lbs may consume up to 4 scoops. Do not exceed recommended dose. Shake contents well prior to every use."

27.    The labels and advertisements for the T-Up-branded products state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "Sodium D-Aspartic Acid"

    b.  It is to be taken by oral ingestion.

    c.  "Nutrex raises the bar on testosterone boosting by bringing you T-UP Black"

    d.  "In one study, the Sodium D-Aspartic Acid used in T-Up led to an average 42% increase in testosterone after only 12 days of use"

    e.  "Days 1-10:  Take 5 Black Liqui-Caps twice per day between meals"

    f.  "Day 11 and on:  Take 5 Black Liqui-Caps once per day between meals"

    g.  "Scientific research has shown that the Sodium D-Aspartic Acid in T-UP can be stored in the body and continues to keep testosterone levels elevated for several days even after study participants stopped taking it, supporting the conclusion that the testosterone boosting effects of this product will build up over time"

28.    The labels and advertisements for the product D-pol state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid"

    b.  It is to be taken by oral ingestion.

    c.  "42% increase in free testosterone"

    d.  "expect intense strength and lean muscle accrual through increased circulating free testosterone levels"

    e.  "d-aspartic acid (a chief ingredient in d-pol) has been reported to increase circulating testosterone, d-pol should not be used by women"

**COMPLAINT FOR PATENT INFRINGEMENT**

f.  "Take 1 serving with a mixed food meal"

g.  "full dosage of 3 tablets per day"

h.  There are 3,120 mg of D-Aspartic Acid per serving (3 tablets), and the product instructs users to take one serving per day.

29.  The labels and advertisements for the product Pure Test state, as relevant to this matter and without limitation, as follows:

a.  The product contains "Aspartic Acid (DAA)"

b.  It is to be taken by oral ingestion.

c.  "PURE TEST is PURE TESTOSTERONE, free from anything inferior, totally refined, clean, true TESTOSTERONE. PURE TEST is made from 100% HPLC verified D-Aspartic Acid (DAA). D-Aspartic Acid is a NATURAL TESTOSTERONE boosting POWERHOUSE that has been shown to SIGNIFICANTLY increase TESTOSTERONE levels after prolonged use. D-Aspartic Acid has been shown to BOOST TESTOSTERONE in actual HUMAN studies, not in plant, animal, or some bull*%#* laboratory study other supplement companies use to "validate" their latest ingredients. Taken regularly PURE TEST results in increased strength, energy levels, and sex drive. Boost your test with the best, FINAFLEX PURE TEST!"

d.  "Serving Size: 1 Capsule"

e.  "As a dietary supplement take 4-6 capsules daily for 30 days consecutively.  Take FINAFLEX PURE TEST every night at bedtime to maximize effectiveness as a testosterone elevator.  For optimal results use PURE TEST for 6-12 weeks.  For extreme results take two servings of PURE TEST, spaced 12 hours apart, for 4-8 weeks."

f.  The product provides 500 mg of DAA per serving.

g.  Instructions are to take at least 2 capsules, but up to 6, per day, which equals or well exceeds 1 gram per day.

COMPLAINT FOR PATENT INFRINGEMENT

30.   The labels and advertisements for the product Revolution PCT state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "D-Aspartic Acid (DAA) (as part of a "Testosterone Amplification Blend")"

    b.  It is to be taken by oral ingestion.

    c.  "PCT Revolution will revitalize testosterone levels leading to increased energy, strength, and sex drive"

    d.  "Amplify Testosterone"

    e.  "As a dietary supplement take 2-4 capsules at night before bed.  For best results continue use of PCT Revolution for 4-8 weeks.  DO NOT exceed 8 weeks of continued use."

31.   The labels and advertisements for the product Ignite 2 state, as relevant to this matter and without limitation, as follows:

    a.  The product contains "AMINOSTERONE (d-Aspartic Acid Diethyl Ester HCL), d-Aspartic Salt"

    b.  It is to be taken by oral ingestion.

    c.  "Built with AMINOSTERONE a revolutionary new amino acid derivative that skyrockets total testosterone in under 30 days"

    d.  "Built with AMINOSTERONE a revolutionary new d-Aspartic Acid derivative that skyrockets total testosterone in under 30 days...AMINOSTERONE has been shown to be 400 times more soluble than regular d-Aspartic Acid when mixed into solution, leading to higher absorption and bioavailability in the body."

    e.  "As a dietary supplement, mix 1 scoop with 6-12 ounces of cold water and consume 5-15 minutes prior to workout....For best results consume IGNITE 2 on training and non-training days to maximize effectiveness of ingredients AMINOSTERONE & Crea-Trona"

## IV.   DEFENDANT'S INFRINGEMENTS

### A.   DIRECT INFRINGEMENTS

32.   Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and the products Defendant advertises and markets, have taken, used, and orally administered the accused products, which Defendant has advertised, distributed and sold to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone.

33.   Defendant has encouraged and/or is aware of these persons' oral administration of the accused products for these purposes, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and the Defendant advertises and markets are acting under Defendant's direction and control when practicing the method disclosed in the '908 patent.

34.   Therefore, Defendant directly practices the method as set forth in the '908 patent and it is a direct infringer of the patent.

### B.   INDIRECT INFRINGEMENTS

35.   End-users of the accused products are also direct infringers of the '908 patent, because they have taken, used, and orally ingested the accused products which have been formulated to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the a D-aspartic acid compound as defined in the '908 patent present in the products in an amount and for a time sufficient to increase their levels of testosterone.

36.   These end-users practice the method as set forth in the '908 patent and are direct infringers of the patent.

37.   The labels and advertising for the accused products explain the elements and essential elements of the method disclosed in the '908 patent to end-users and encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice that method, and end-users do practice that method.

38.   By offering to sell and selling the accused products, Defendant has specifically intended to cause these end-users to directly infringe the claimed methods of the patent, and has in fact urged them to do so.

39.   The accused products are not suitable for non-infringing uses, and none of Defendant's marketing statements for the accused products disclose any uses for the products nor for the D-aspartic acid compound as defined in the '908 patent in those products that do not infringe upon the method disclosed in the '908 patent.

40.   The inclusion of the D-aspartic acid compound in the products is material to practicing the method disclosed in the '908 patent.

41.   Defendant has knowledge that the accused products are especially adapted by end-users of the products for the practicing of the method disclosed in the '908 patent, and, indeed, Defendant encourages, urges, and induces the products' end-users to purchase and orally administer the accused products to practice that method, and has done so in the past.

42.   Defendant has intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purpose, without limitation, of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound as defined in the '908 patent present in the products in an amount and for a time sufficient to increase the levels of testosterone.

43.   Defendant had actual, first-hand knowledge of the '908 patent after the June 19, 2012 issuance of the patent, the day of which a very publicly available and widely known press release was issued by Plaintiff announcing the issuance of the patent. The press release stated as follows:

"ThermoLife International, LLC (ThermoLife) announced today that the United States Patent and Trademark Office (USPTO) issued U.S. Patent No. 8,202,908 (the '908 patent) for ThermoLife's novel use of D-Aspartic acid (DAA). The patented method uses a DAA compound to increase the levels of testosterone, growth hormone, and/or insulin-like growth factor 1 in adult males. The potential benefits of DAA are astounding and the patented method will transform testosterone boosting dietary supplements and methods.

ThermoLife has a long history of developing innovative and proven products and processes. With the addition of the '908 patent, ThermoLife has been awarded seven patents covering more than 20 various compounds and methods of use, and still has many pending applications in the pipeline and new technologies at various stages of development.

These patents protect ThermoLife's innovative and proven products and methods, as well as validate ThermoLife's market leadership in new dietary ingredient research. These patents also allow ThermoLife to continue building confidence with its licensing partners and give consumers and companies that work with ThermoLife assurance that they are buying one-of-a-kind products that they cannot get elsewhere.

**About Thermolife**

Founded in 1998, ThermoLife is dedicated to developing real products and methods that work. ThermoLife is a leading manufacturer in the sports nutrition and supplement industry. ThermoLife is committed to developing only the purest, most effective, and innovative products. For more information about

ThermoLife and its patents, or to license any of ThermoLife's patented ingredients contact Ron Kramer at Ron(at)ThermoLife(dot)com."

44.     Thereafter, Plaintiff sent detailed communications to Defendant to notify Defendant of the patent and its infringement prior to the filing of this suit, and, upon information and belief, notified or should have notified the manufacturer and marketer of the accused products of such communications.

45.     Defendant has brazenly and willfully decided to infringe the '908 patent despite knowledge of the patent's existence and each of its infringements of the patent.

46.     At a minimum, and in the alternative, Plaintiff pleads that Defendant willfully blinded itself to the infringing nature of the accused products' sales.

47.     Defendant has not ceased its own direct infringements, contributory infringements, or inducements of infringements by end-users despite its clear knowledge of the '908 patent.

48.     In sum, Defendant specifically induces end-users to use the accused products, and particularly the d-aspartic acid compound in these products, for increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the d-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone, which is the very method described in the '908 patent.

49.     This method is the sole reason Defendant offers to sell and sells the d-aspartic acid compound in the accused products, and end-users' experiences are consistent with the fact that they have practiced the method, in that end-users have increased their levels of testosterone by ingesting the d-aspartic acid compound present in the accused products.

50.     Defendant's infringing activities have not stopped despite its knowledge of the patent's existence.

**COMPLAINT FOR PATENT INFRINGEMENT**

## V.   **FIRST CAUSE OF ACTION**

### Infringement of U.S. Patent No. 8,202,908

51.   Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

52.   The Defendant has in the past and still is literally infringing or infringing under the doctrine of equivalents, directly and indirectly through contributory and/or induced infringement, claims 1 and 2 of the '908 patent by making, using, selling, and offering for sale dietary supplements embodying claims 1 and 2 of the patented invention, and will continue to do so unless enjoined by this Court.

53.   Examples of Defendant's direct infringement include, without limitation, the fact that Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and the products Defendant advertises and markets, have taken, used, and orally administered the accused products, which Defendant has advertised, distributed and sold to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone, and when administered pursuant to the accused products' instructions for use, leading to an ingestion of about 1 to 20 grams of the D-aspartic acid compound daily.

54.   Defendant has encouraged and is aware of these persons' oral administration of the accused for these purposes, these persons are acting under Defendant's direction and control, and therefore Defendant is directly practicing the method set forth in the '908 patent.

55.   End-users of the accused products are also direct infringers of the '908 patent, because they have taken, used, and orally ingested the accused products which have been formulated to include a D-aspartic acid compound as defined in the '908 patent for the specific reason of increasing the levels of testosterone in adult male

humans taking the products, by having them orally ingest the a D-aspartic acid compound as defined in the '908 patent present in the products in an amount and for a time sufficient to increase their levels of testosterone, and when administered pursuant to the accused products' instructions for use, leading to an ingestion of between about 1 to 20 grams of the D-aspartic acid compound daily.

56.     Therefore, these end-users practice the method as set forth in the '908 patent and directly infringe the patent.

57.     Defendant's advertising explain the elements or essential elements of the method disclosed in the '908 patent to end-users and encourage, urge, and induce the products' end-users to purchase and orally administer the accused products to practice that method.

58.     The accused products are not suitable for non-infringing uses, and none of the labels or advertisements for the products disclose any uses for the D-aspartic acid compound in the products that do not infringe upon the method disclosed in the '908 patent.

59.     Defendant has knowledge that the accused products are especially adapted by end-users of the products for increasing the levels of testosterone in adult male humans taking the accused products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone.

60.     Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the products to increase the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone – and Defendant has done so in the past.

61.     Defendant therefore is liable for contributory infringement of claims 1 and 2 of the '908 patent.

**COMPLAINT FOR PATENT INFRINGEMENT**

62.     Defendant has intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the products for the purpose, without limitation, of increasing the levels of testosterone in adult male humans taking the products, by having them orally ingest the D-aspartic acid compound present in the products in an amount and for a time sufficient to increase the levels of testosterone, and instructing them to do so in a daily amount of between about 1 and 20 grams of the compound daily.

63.     Defendant has actual, first-hand knowledge of the '908 patent, but has not ceased their contributory infringement or inducement of infringements by end-users despite their knowledge of the '908 patent.

64.     Defendant is therefore liable for induced infringement of claims 1 and 2 of the '908 patent.

65.     Defendant's activities have been without express or implied license by Plaintiff.

66.     The infringements by Defendant have been and continue to be willful, since the infringements have not ceased.

67.     As a result of Defendant's acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

68.     As a result of Defendant's acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendant's infringements and inducements, which will continue unless Defendant is enjoined by this Court.

69.     Plaintiff believes that Defendant's past infringements and/or continuing infringements have been deliberate and willful, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against Defendant as follows:

1.   A declaration that Defendant has infringed the '908 patent under 35 U.S.C. §§ 271 *et seq.*;

3.   That injunctions, preliminary and permanent, be issued by this Court restraining Defendant, its respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the '908 patent;

4.   That Defendant be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendant's infringement of the '908 patent, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendant, in accordance with 35 U.S.C. § 284;

5.   That the damages awarded to Plaintiff with regard to the '908 patent be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

6.   That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

7.   That Plaintiff be awarded its interest and costs of suit incurred in this action;

8.   Compensatory damages;

9.   Punitive damages; and

10.   That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted,
NEWPORT TRIAL GROUP
A Professional Corporation

Dated:  May 20, 2013

By:   Tyler J. Woods
Attorneys for Plaintiff

**COMPLAINT FOR PATENT INFRINGEMENT**

## **DEMAND FOR JURY TRIAL**

1

2        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a

3 jury trial for all issues in this case that properly are subject to a jury trial.

4

5                                          Respectfully submitted,

6                                          NEWPORT TRIAL GROUP
                                           A Professional Corporation

7

8 Dated:  May 20, 2013

                                           By:   Tyler J. Woods

9                                                Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR PATENT INFRINGEMENT**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is _____.

The case number on all documents filed with the Court should read as follows:

## CV13- 3628 SVW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

---

Name & Address:  NEWPORT TRIAL GROUP
Tyler J. Woods (State Bar No. 232464)
Richard H. Hikida (State Bar No. 196149)
Scott J. Ferrell (State Bar No. 202091)
4100 Newport Place, Suite 800, Newport Beach, CA
92660

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Thermolife International, LLC

PLAINTIFF(S)

v.

NUTRAPLANET

DEFENDANT(S).

CASE NUMBER

CV13-03628 SVW (JCx)

SUMMONS

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Newport Trial Group_____, whose address is _4100 Newport Place, Suite 800, Newport Beach, CA  92660_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAY 2 1 2013__

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address: NEWPORT TRIAL GROUP
Tyler J. Woods (State Bar No. 232464)
Richard H. Hikida (State Bar No. 196149)
Scott J. Ferrell (State Bar No. 202091)
4100 Newport Place, Suite 800, Newport Beach, CA
92660

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Thermolife International, LLC

PLAINTIFF(S)

v.

NUTRAPLANET

DEFENDANT(S).

CASE NUMBER

**CV13-03628 SVW (JCx)**

**SUMMONS**

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Newport Trial Group_____, whose address is _4100 Newport Place, Suite 800, Newport Beach, CA  92660_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  __MAY 2 1 2013__

By: ___A. Gonzalez___
Deputy Clerk

(Seal of the Court)          1225

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> THERMOLIFE INTERNATIONAL, LLC | DEFENDANTS <br> NUTRAPLANET |
|---|---|

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> NEWPORT TRIAL GROUP, 895 Dove Street, Suite 425, Newport Beach, CA 92660 <br> Tel; (949) 706-6464  Fax (949)706-6469 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:**  JURY DEMAND: ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☑ MONEY DEMANDED IN COMPLAINT: $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1331, 1338, and 1367

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS <br> PERSONAL INJURY | TORTS <br> PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | | | ☐ 465 Other Immigration Actions | | |

### CV13-03628 SVW (JCx)

**FOR OFFICE USE ONLY:**  Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.   Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.   Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.   For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.   Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | THERMOLIFE INTERNATIONAL, LLC - Maricopa County, Arizona |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | NUTRAPLANET |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff's Claim - Los Angeles, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date MAY 20, 2013

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |